CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
JELANI J. LINDSEY (Bar No. 280092)
(E-Mail: Jelani_Lindsey@fd.org)
AIMEE J. CARLISLE (Bar No. 351972)
(E-Mail: Aimee_Carlisle@fd.org)
MICHAEL L. BROWN II (Bar No. 338623)
(E-Mail:  michael_l_brown@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone:  (213) 894-2854
Facsimile:  (213) 894-0081

Attorneys for Defendant
DENEVYOUS HOBSON

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| UNITED STATES OF AMERICA, | Case No. CR 23-102-FLA-1 |
|---|---|
| Plaintiff, | **DEFENSE OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE #1 RE: ADMISSION OF EVIDENCE AS 404(B)** |
| v. | |
| DENEYVOUS HOBSON, | Hearing Date:   May 17, 2024 |
| Defendant. | Hearing Time:   10:30 a.m. |

Defendant, Deneyvous Hobson, by and through his attorneys of record, hereby submits his opposition to the Government's Motion *in Limine* to admit evidence under Fed. R. Evid. 404(B).

///

1    This opposition is based on the files and records of the case, the attached

2  Memorandum of Points and Authorities, and any further evidence as may be adduced at

3  the hearing on this Motion.

4    Mr. Hobson requests an evidentiary hearing to resolve any and all disputes of

5  fact.

6

7

8                                                    Respectfully submitted,

9                                                    CUAUHTEMOC ORTEGA
                                                     Federal Public Defender
10

11  DATED:  March 20, 2024                           By  */s/ Michael L. Brown II*
                                                     _____
12                                                   MICHAEL L. BROWN II
                                                     JELANI LINDSEY
13                                                   AIMEE CARLISLE
                                                     Deputy Federal Public Defenders
14                                                   Attorneys for Deneyvous Hobson

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT ................................................................................................... 2

    A.    The Proffered Evidence the Government Seeks to Admit Does Not Meet the "Inextricably Intertwined" Exception for Admission. ................ 2

        1. The Applicable Standard. ........................................................................ 2

        2. The Proffered Evidence Does Not Constitute the Same Transaction Under the "Inextricably Intertwined" Doctrine. ............................... 2

        3. The Proffered Evidence Is Not Necessary to Tell a Coherent and Comprehensible Story. ....................................................................... 3

            a.  The Government Does Not Seek to Admit January 9, 2023 Evidence. ................................................................................. 3

            b. The Proffered Evidence is Extrinsic and therefore not Analogous to the Case Law it Cites ........................................ 5

    B.    The Proffered Evidence Does not Meet the Standard for Admission Under 404(b) ...................................................................................... 8

        1. The Applicable Standard. ...................................................................... 8

        2. The Proffered Evidence Does Not Prove a Material Point.................... 9

        3. The Proffered Evidence Is Remote ..................................................... 11

        4. There is Not Sufficient Evidence to Support a Finding That Mr. Hobson Committed the Other Uncharged Acts ............................. 12

        5. The Proffered Evidence Is No More Similar than January 9, 2023 Evidence. ...................................................................................... 13

    C.    Even if This This Court Finds the Proffered Evidence to be Inextricably Intertwined, And Satisfies Rule 404(b), it Must Not Run Afoul of Fed. R. Evid. 403 ............................................................................................ 13

III. CONCLUSION ............................................................................................. 14

i

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Huddleston v. United States*,
   485 U.S. 681 (1988).................................................................................................. 13

*United States v. Arambula–Ruiz*,
   987 F.2d 599 (9th Cir.1993)..........................................................................................9

*United States v. Dorsey*,
   66 F. 3d 1006 (9th Cir. 1995)........................................................................................2

*United States v. Ono*,
   918 F.2d 1462 (9th Cir. 1990)............................................................................... 11, 12

*United States v. Parker*,
   400 F.2d 248 (9th Cir. 1968)................................................................................ 10, 12

*United States v. Proctor*,
   861 Fed. Appx. 760 (11th Cir. 2021). ............................................................. 4, 5, 7, 8

*United States v. Rodriguez*,
   316 F. App'x 612 (9th Cir. 2009)............................................................................. 5, 7

*United States v. Romero*,
   282 F.3d 683 (9th Cir. 2002)................................................................................... 9, 13

*United States v. Rrapi*,
   175 F.3d 742 (9th Cir. 1999)................................................................................ 5, 6, 7

*United States v. Webb*,
   466 F.2d 1352 (9th Cir. 1972)..................................................................................... 11

*United States v. Williams*,
   989 F.2d 1061 (9th Cir. 1993)................................................................................. 5, 7

*United States v. Wright*,
   2021 WL 5048195 (9th Cir. 2021)......................................................................... 5, 6

**Federal Statutes**

18 U.S.C. § 924(c) .............................................................................................................1

18 U.S.C. § 1951................................................................................................................1

ii

1

**Federal Rules**

Fed. R. of Evid. 403 ........................................................................................ 1, 9, 13, 14

Fed. R. of Evid. 404(b) .............................................................................................. *passim*

**Other Authorities**

Oxford English Dictionary.retrieved from http://www.oed.com ..................................... 9

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES
### I.INTRODUCTION

The Indictment in this case alleges that Mr. Hobson allegedly conspired and participated in a robbery on February 14, 2022, in violation of 18 U.S.C. §§ 1951 and 18 U.S.C. 924(c). The government in its 404(b) motion seeks to admit certain evidence under Fed. R. of Evid. 404(b): including 1) evidence concerning a robbery on June 9, 2022, and 2) evidence concerning a robbery on September 15, 2022. The government argues first that the evidence is admissible as inextricably intertwined because it is necessary to offer a coherent and comprehensible story. Dkt. No. 77. Alternatively, the government argues that if the evidence is not inextricably intertwined, the evidence is otherwise admissible under Fed. R. of Evid. 404(b). *Id.* Last, the government argues that the proffered evidence is more probative than unfairly prejudicial under Fed. R. of Evid. 403. *Id.*

The government is flatly wrong. The proposed evidence is not inextricably intertwined as it is not intrinsic evidence and presents additional collateral issues rather than shed any light on the charged conduct.

The proposed evidence also does not meet the Ninth Circuit's four-part test for admissibility under Fed. R. of Evid. 404(b). The proposed evidence does not tend to prove a material issue with respect to February 14, 2022. The proposed evidence constitutes alleged acts that occurred after the charged conduct and the similarity of import is that *identity* is at issue. The proposed evidence is potential testimony and video footage from some four and seven months, respectively, after the charged conduct that would require substantial additional pretrial discovery, motion practice, and thus ultimately extend the trial. Admitting this evidence would create a situation where multiple minitrials are necessary; this in turn would both confuse the jury and waste the jury's time.

Last, the proposed evidence is highly prejudicial here because *identity* is at issue and the only actual purpose can be to either bolster the charged conduct or to suggest

1

propensity. There cannot truly be said to be any probative value in post-charged conduct evidence where *identity* is also at issue and nothing about the proposed evidence helps explain why law enforcement arrested Mr. Hobson.

## II. ARGUMENT

### A.   THE PROFFERED EVIDENCE THE GOVERNMENT SEEKS TO ADMIT DOES NOT MEET THE "INEXTRICABLY INTERTWINED" EXCEPTION FOR ADMISSION.

The government argues that the evidence it seeks to admit concerning robberies on June 9, 2022, and September 15, 2022, are exempt from the requirements of Rule 404(b) because it is "inextricably intertwined" with the February 14, 2022 charged crime. This is not true.

#### 1. The Applicable Standard.

The standard for admission of evidence under the "inextricably intertwined" doctrine in the Ninth Circuit is as follows: evidence must either 1) "constitute a part of the transaction that serves as the basis for the criminal charge," or 2) "admission of other act evidence [is] 'necessary … to offer a coherent and comprehensible story regarding the commission of the crime." *United States v. Dorsey*, 66 F. 3d 1006, 1012-13 (9th Cir. 1995). Neither of these prerequisites apply here.

#### 2. The Proffered Evidence Does Not Constitute the Same Transaction Under the "Inextricably Intertwined" Doctrine.

The government makes no argument in its motion that the proffered evidence constitutes a part of the February 14, 2022, crime charged. *See* Govt. Mtn at 9-10. Mr. Hobson agrees there is no argument to be made that evidence of the other uncharged acts are a part of the alleged crime charged from February 14, 2022, which predates the uncharged acts. Therefore, Mr. Hobson will not address this possible ground for admission.

### 3. The Proffered Evidence Is Not Necessary to Tell a Coherent and Comprehensible Story.

The government does argue that the evidence of the June 9, 2022 and September 15, 2022 robberies "completes the story of the charged robbery" and are "clearly part of the same transaction or series of transactions as the charged robbery." Dkt. No. 77 at 9. Inexplicably, the government states that "uncharged robberies … give full context to the charged conspiracy and is probative as to the charged robbery." *Id.* This assertion is refuted by a) the fact that the government does not seek to admit evidence from an additional January 9, 2023, robbery, and b) the evidence the government seeks to introduce is extrinsic and therefore not supported by the case law the government cites.

### a. *The Government Does Not Seek to Admit January 9, 2023 Evidence.*

Contrary to its assertion that the June 9, 2022 and September 15, 2022 robberies are necessary to tell the government's story, in its introduction to its motion, the government states:

> "But this charged conduct does not encompass the entirety of the conspiracy, or defendant's conduct in that conspiracy. On September 15, 2022, and January 9, 2023, armored truck drivers were robbed in the exact same manner."

Dkt. No. 77 at 2. The government argues that providing additional alleged uncharged acts evidence is necessary to complete the picture for the jury—but simultaneously is failing to complete the picture by providing all of the information about the robberies. The government's decision not to seek admission regarding January 9, 2023 is instructive.

The January 9, 2023 robbery is the only of the three uncharged acts for which Special Agent Cardenas is on record stating that she does not believe Mr. Hobson committed any wrongdoing. *See* Ex. A (Arrest Interrogation at 29:58-30:03 & Draft Transcript). This statement contradicts the Complaint in this case where Cardenas swears under oath that there is "Similar Modus Operandi in All Four Robberies." Dkt.

3

No. 1 at 35, ¶64. The government cannot have it both ways: it cannot simultaneously offer additional evidence to complete an alleged story while omitting evidence to complete that story fully.

The alleged other acts evidence concerning June 9, 2022 and September 15, 2022 are being proffered to bolster the government's allegation with respect to the February 14, 2022, charged acts. However, this is improper in a case where the critical issue is *identity.* Rather than permissibly prove identity with respect to the February 14, 2022 robbery, the government seeks to admit evidence of other robberies — where *identity* is an *also* issue.

Furthermore, even if the government truly believes identity is not at issue, the evidence of the other robberies would only prove propensity rather than demonstrate any logical completion, comprehensive, or coherency argument. Informing the jury that there were robberies on June 9, 2022, and September 15, 2022, while excluding evidence of January 9, 2023 — all of which have *identity* at issue — does nothing to complete the story with respect to whether Mr. Hobson is the person identified in the February 14, 2022 robbery. The evidence does not help a fact finder understand how law enforcement came to arrest Mr. Hobson or piece together evidence that led to his arrest. *See United States v. Proctor*, 861 Fed. Appx. 760, at 769 (where evidence of carjackings before the charged conduct robbery and alleged robberies after charged conduct were allowed because it showed how law enforcement pieced together defendant and codefendant's involvement). Quite to the contrary, the proffered evidence only can be said to bolster the government's allegations while ignoring the issue of insufficiency and confusing the jury.

Granting the government's motion would ultimately fail to provide a complete, comprehensive narrative of the alleged events because it omits one of the relevant events. Additionally, the proffered evidence would require more discovery and motion practice leading ultimately to a trial within a trial versus admission of intrinsic evidence in line with caselaw precedent.

4

1
2

    *b. <u>The Proffered Evidence is Extrinsic and therefore not Analogous to the Case Law it Cites</u>*

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

    The proffered evidence the government seeks to admit is truly extrinsic to the February 14, 2022 robbery. It does not show how law enforcement pieced together the evidence that led to Mr. Hobson's arrest as opposed to his codefendant's. Dkt. No. 1. Just as January 9, 2023 does not bolster the narrative of the government, so too the June 9, 2022 and September 15, 2022 robberies cannot be said to be intrinsic evidence that helps complete the government's story. Rather the government seeks to admit evidence to bolster its conclusory allegations, chiefly with respect to the identification of Mr. Hobson.  For example, the government argues the proffered evidence ties to Mr. Hobson "primarily in that the robbers or getaway cars were seen at … the Chesapeake Avenue address before and after the robberies." Dkt. No. 77 at 3. However, law enforcement swore out search warrants for Mr. Hobson's Malibu vehicle and Bartlett address. *See* Dkt. No. 1. The proffered evidence, sworn to in the associated affidavits, concerning June 9, 2022 and September 15, 2022 in no way involves Mr. Hobson or his Malibu. *See* Dkt. No. 1 at 12-32. Rather, the proffered evidence may, in the light viewed most favorable to the government, connects to Mr. Davis, who has already pled guilty. However, the government is not offering Mr. Davis' testimony against Mr. Hobson in this case to complete any narrative. Unlike the case law the government cites to for support, the proffered evidence is extrinsic to Mr. Hobson's charged conduct and only being offered to bolster and suggest propensity.

22
23
24
25
26
27
28

    The government cites five cases to support its argument for the proffered evidence: *United States v. Wright*, No. 19-10152, 2021 WL 5048195 (9th Cir. Nov. 1, 2021), *United States v. Rrapi*, 175 F.3d 742 (9th cir. 1999), *United States v. Rodriguez*, 316 F. App'x 612 (9th Cir. 2009), *United States v. Williams*, 989 F.2d 1061 (9th Cir. 1993), and *United States v. Proctor* (11th Cir. 2021). Dkt. No. 77 at 9-10. Each case the government cites demonstrates why the proffered evidence here is inadmissible under the inextricably intertwined doctrine.

1    In *Wright*, the Ninth Circuit held the lower court properly admitted extrinsic

2    evidence of the accused's statements because

3

4    the district court limited the prosecution by prohibiting
5    evidence that Wright was charged with a robbery of which he
6    was not convicted and by only allowing testimony that he
7    boasted of his robbery prowess. The point was not whether his
     statements were true—the point was that he made them to
8    persuade Harris to participate.

9    *Wright*, No. 19-10152, 2021 WL 5048195, at \*1. *Wright* is distinguishable from the

10   instant case because in that case there was no dispute about the accused's identity as the

11   declarant of the statements. In contrast, here, the government has failed to offer

12   sufficient proof not just of Mr. Hobson's identity in the charged act but also in the

13   uncharged acts. There is nothing beyond the government's assertions that corroborates

14   its claim that Mr. Hobson was in fact present at the other robberies.  Whereas in

15   *Wright*, the codefendant was testifying to shed light on the charged conduct, here the

16   government has no similar evidence from the codefendant to offer to the jury.

17        *Rrapi* is similarly distinguishable. The evidence in *Rrapi* that was admitted under

18   the inextricably intertwined doctrine was through codefendant testimony about how the

19   defendant executed robberies like the charged conduct. Furthermore, the co-defendant

20   testified that the accused was actually present during the other related robberies; again,

21   the accused's identity in the uncharged acts was not at issue. the Nevertheless, the court

22   there refused to admit videotape of an after the charged conduct robbery because "it

23   raised too many collateral issues." 175 F.3d at 750 (9th Cir. 1999). Here the government

24   seeks to admit post charged conduct video evidence where many collateral issues like

25   *identity* exist. The Ninth Circuit also noted with approval that the lower "court *excluded*

26   some of the proffered evidence. As indicated earlier, the court refused to admit the

27   videotape of [a] break-in 'because it raise[d] too many collateral issues.'" *Rrapi*, 175

28

F.3d at 750 (emphasis in original). The proffered evidence here is actually more analogous to the evidence excluded in *Rrapi*.

*Rodriguez* also supports denying, not granting, the government's motion. The evidence admitted in *Rodriguez* under the inextricably intertwined doctrine was testimony from a recruited getaway driver in connection with uncharged acts. 316 Fed. Appx at 614. The court allowed the evidence as it demonstrated a link between "what Rodriguez told Muniz he intended to do and what [Rodriguez] was charged with doing[,]" which made it intrinsic. *Id*. There was no issue of *identity* in *Rodriguez* as there is here. *Id.* The proffered evidence here does not go to the motivation for any charged conduct as in *Rodriguez.*

*Williams* also fails to support the government's position. There, the evidence admitted through an accomplice pursuant to a plea agreement was testimony from a customer who testified about the relationship with the accused that provided context for and predated the charged conduct was intrinsic. 989 F.2d at 1070 (9th Cir. 1993). The court in *Williams* found that "the additional acts predating the conspiracy" informed its ruling. *Id.* Again, there was no dispute that about the accused's identity as the person who committed the uncharged acts. Here, in contrast, the government's proffered evidence does not predate the charged conduct; instead, it follows the charged acts. Here, the proffered evidence does not provide any context for the February 14, 2022, charged conduct.

The government's reliance on *Proctor* is also unavailing. Critically, there the contested evidence was admitted only after the defense opened the door to the relationship between the testifying witness and the accused — not in the government's case-in-chief. Furthermore, the evidence was again proffered through a witness who testified about her actual relationship with the accused and acts that occurred "just before and during" the charged acts, not after them. There was also no dispute about the accused's identity in the uncharged acts. The evidence in *Proctor*, discussed *supra*, was admitted because it shed light on the context, motive, and set-up of the crime and was

7

1    necessary to complete the story of a two-week crime spree by codefendants.  861 Fed.

2    Appx. At 767 (11th Cir. 2021). The court further noted

3

4                Coenen, as Proctor's co-conspirator, was involved in all of
5                these acts, a fact that weighs heavily in favor of the court's
                 finding that they were intertwined. […] The offenses,
6                charged and uncharged, occurred during a relatively short
7                time frame: six in two weeks, or nearly one every two
                 days.
8

9    *Id.* at 768 (internal citation omitted). Nothing about *Proctor* support's the government's

10   request here. The proffered evidence here does not shed light on context, motive, or set-

11   up of the crime with respect to Mr. Hobson as *identity* is at issue.

12       The government argument that the Ninth Circuit has repeatedly admitted

13   uncharged robberies as inextricably intertwined is true, just not true with respect to

14   evidence like the proffered evidence in a case where *identity* is at issue and the

15   proffered evidence is remote and post charged conduct. Every case the government

16   relies upon fails to support the government's position.

17

18   **B.    THE PROFFERED EVIDENCE DOES NOT MEET THE STANDARD FOR**

19           **ADMISSION UNDER 404(B)**

20       Alternatively, the government argues that if its proffered evidence is not

21   admissible under the inextricably intertwined doctrine, it is admissible under Fed. R. of

22   Evid. 404(b). The government's argument here fails as well.

23   **1. The Applicable Standard.**

24       In the Ninth Circuit, a four-part test is used to determine the admissibility of

25   evidence pursuant to Rule 404(b):

26                Such evidence may be admitted if: (1) the evidence tends to
27                prove a material point; (2) the other act is not too remote in
                  time; (3) *the evidence is sufficient to support a finding that*
28

*defendant committed the other act*; and (4) (in certain cases) the act is similar to the offense charged.

*Romero*, 282 F.3d at 688 (citation omitted) (emphasis added). The government "has the burden of proving that the evidence meets all of the above requirements." *United States v. Arambula–Ruiz*, 987 F.2d 599, 602 (9th Cir.1993). "If the evidence meets this test under Rule 404(b), the court must then decide whether the probative value is substantially outweighed by the prejudicial impact under Rule 403." *Romero*, 282 F.3d at 688 (citation omitted).

### 2. The Proffered Evidence Does Not Prove a Material Point

The government argues the proffered evidence proves 1) motive, 2) intent, 3) identity, and 4) modus operandi. Dkt. No. 77 at 11. The government then lists six factors that it argues prove these material points: 1) clothing, 2) getaway cars, 3) assault rifle usage, 4) armored guard ambushing near Chesapeake address, 5) stealing of the Guard's firearm. *Id.* The only material point that would be of interest here is *identity*.

There can be nothing about the factors the government lists that do anything to prove motive or intent and the government seems to say nothing with respect to this as well. Dkt. No. 77 at 11. With respect to modus operandi, any argument the government makes is undermined by not seeking to admit evidence with respect to January 9, 2023. *See supra*; Dkt. No. 1 at 34 (showing photo of September 14, 2022 surveillance getaway car connected to January 9, 2023 getaway car).

To speak to the real issue in this case, *identity*, the government argues that the acts are "unique and identical," such that there is a "personal signature" that proves the material point of *identity*. Dkt. No. 77 at 11, L 8-10. The word identical means "being the same in identity; the very same." Oxford English Dictionary.retrieved from http://www.oed.com. The government's use of "personal signature" appears to be a term of art created for this litigation and not based in any case law citation. Dkt. No. 77 at 11. Irrespective of the government's preferred terms, the evidence proffered here

9

1
2

does not align with either theory upon examination of the cases the government cites for its purpose.

3
4
5
6
7
8
9

With respect to "identical," one aspect that breaks the definitional premise that every detail be alike is one of the government's supposed six factors — the getaway cars. While Mr. Davis's car is present in each robbery implicating him, the other getaway cars vary across the alleged acts such that June 9, 2022 involves a Silver Chevrolet Equinox and September 15, 2022 involves a gray Ford Explorer SUV. Dkt. No. 1 at ¶ 32; ¶43a. The robbery on February 14, 2022 involves a Honda sedan vehicle. None of the evidence meets the standard of "identical" that the government outlined.

10
11
12
13

With respect to "uniqueness" or as the government argues "personal signature," the case law it cites describes a unique situation such as to prove identity in *Parker*. 400 F.2d 248 (9th Cir. 1968). *Parker* construes an example of uniqueness or the government term "personal signature" to be:

14
15
16
17
18
19

> The method common to all the robberies was that the robber, posing as a hitch-hiker, kidnapped the 'Good Samaritan' who offered him a ride and, at gunpoint, required the hostage to drive him to and to accompany him into a bank, and, having supplied him with a pillow case, directed him to fill it with money from the tellers' cages.

20
21
22
23
24
25
26

*Id.* at 253. The description of the modus operandi in *Parker* truly warrants the uniqueness label or the government's preferred "personal signature." Dkt. No 77 at 11. Posing as hitch-hiker, kidnaping, forcing another to be an accomplice and driver, all speak to a very specific and unique modus operandi not common to most robbers. *See also id.* at 253 (J. Thompson concurring) ("There is no doubt of Parker's identity as the person committing this felonious assault, all material circumstances of which were the same as the unique and unusual methods employed in the earlier bank robberies.").

27
28

10

The other case the government cites to support its argument that the proffered evidence is evident of a "personal signature" also undermines its argument as it undercuts the factors it labels unique. In *Webb*, the Ninth Circuit found the lower court erred in admitting bad act evidence and solely on that ground reversed the conviction. The court concluded

> The second robbery resembled the first in two respects only: (1) in the first case, both robbers wore dark blue ski masks; in the second, Webb wore a mask, apparently of a different type; (2) in the first case, one robber used a pistol; in the second, Webb used a similar pistol. Neither singly nor together are these elements sufficiently distinctive to warrant an inference that Webb was one of the robbers in the first case. Many robbers use masks and guns; many guns look alike. Indeed, the differences between the two robberies are more striking than the resemblances. There is here not enough probative value in the second crime to overcome its prejudicial effect. All that the second robbery shows is that Webb is a bad character, disposed to commit robbery. That is not enough to make the second robbery admissible.

*Webb*, 466 F.2d at 353. The government's argument was actually rejected in *Webb*. Here, the factors the government claims that are "signature" (that robbers that robbed armed guards wearing masks, using guns, disarming them, and stealing their guns so they cannot retaliate) are not indeed "signature" or *"unique"* based upon the *Parker* standard the government cites to in its motion. *Id.* Further, in *Parker*, where evidence was allowed, it was via a witness to testify concerning the prior act, whereas here the government offers no such witness for its proffered evidence.

### 3. The Proffered Evidence Is Remote

The government cites one case to argue that the proffered evidence that is after the February 14, 2022, robbery is not remote, *United States v. Ono*, 918 F.2d 1462, 1465 n.2 (9th Cir. 1990) (examining a prior conviction from seven years before the instant offense conduct). There is a difference between prior acts proven via a

conviction and unproven, subsequent acts where *identity* is an issue. In *Parker*, which the government cites to for its argument regarding identity, the court opines on remoteness:

> Mr. Robinson's testimony related to the appellant's alleged conduct on October 17, 1966. Count I charged similar acts on March 15, 1966; Count II charged similar acts on October 28, 1965; Count III charged similar acts on July 1, 1965; and Count IV charged similar acts on November 19, 1964. **Thus, the alleged objectionable evidence related to acts subsequent to the crimes charged.**
>
> The alleged remoteness of the acts sought to be proved is not decisive as to admissibility, although it may affect the weight of the evidence.

400 F.2d 248, at 251 (emphasis added). Critically, in 1968, remoteness was not a part of the 404(b) test. *See Id.* Today, it is one of the 404(b) factors to be considered. Additionally, the acts the government investigated occurred after the charged conduct, again distinguishing this case from *Ono*.  The evidence is also not being admitted after the accused was convicted of the bad acts; rather, the government is seeking to admit uncharged and unproven acts where *identity* is an issue with respect to every government allegation, further demonstrating that the uncharged acts are too remote to be admitted.

### 4. There is Not Sufficient Evidence to Support a Finding That Mr. Hobson Committed the Other Uncharged Acts

The government misstates the law and argues there need only be sufficient evidence of the uncharged acts, not the standard under 404(b) that there is sufficient evidence to support a finding *the accused committed said acts*. Dkt. No 77 at 12, L7. The standard, even under the caselaw it cites, *Huddleston*, is that evidence is "should be admitted if there is sufficient evidence to support a finding by the jury that the

12

1  defendant committed the similar act." 485 U.S. 681, at 685 (1988). Here, there is
2  insufficient evidence that Mr. Hobson committed the other uncharged acts. The
3  government argues inconsistently across motions that despite there being no percipient
4  witnesses and no actual identifications of Mr. Hobson as a participant in the uncharged
5  acts(according to the government) that the video evidence is "unassailable." *See* Dkt.
6  No. 87; Dkt. No. 81; Dkt. No. 77 at 12. The government has no credible argument that
7  suggests that Mr. Hobson is the person that committed the acts that are the subject of
8  the proffered evidence.

### 5. The Proffered Evidence Is No More Similar than January 9, 2023 Evidence

The government has no rebuttal for arguing selectively that acts from June 9,
2022 and September 15, 2022 are similar but yet January 9, 2023 is dissimilar. *See*
Mot; Dkt. No. 1. To the degree that the government makes any argument that the
proffered evidence is similar, the most similar characteristic is that the other acts reflect
the same critical flaw as the charged act — *identity* is an issue, and there is no evidence
that Mr. Hobson committed the acts in question.

**C. EVEN IF THIS COURT FINDS THE PROFFERED EVIDENCE TO BE
INEXTRICABLY INTERTWINED, AND SATISFIES RULE 404(B), IT MUST NOT
RUN AFOUL OF FED. R. EVID. 403**

Even if this Court finds the evidence meets the 404(b) test, it still must consider
whether it satisfies FRE 403. *See Romero*, 282 F.3d at 688. It does not do so.

Federal Rule of Evidence 403 allows courts to "exclude relevant evidence if its
probative value is substantially outweighed by a danger of one or more of the
following: unfair prejudice, confusing the issues, misleading the jury, undue delay,
wasting time, or needlessly presenting cumulative evidence." FRE 403.

The proffered evidence (even if a court were to find it relevant) is substantially
outweighed by its prejudicial effect. The evidence in question would prejudice Mr.
Hobson because he is unable to confront his codefendant due to conflict of interest in

court. The evidence concerning his codefendant would mislead the jury due to guilt by association. There would be undue delay in that the proffered evidence concerns discovery and legal issues that have not been addressed by the court, creating more litigation and a need for trial within trials. The proffered evidence would waste time and present cumulative evidence that can only be said to go towards propensity.

## III. CONCLUSION

For the foregoing reasons, Mr. Hobson respectfully requests that the Court deny the government's motion *in limine* to admit evidence of alleged other acts under the Inextricably Intwined doctrine and Federal Rules of Evidence 403 and 404(b).

Mr. Hobson requests an evidentiary hearing to resolve any and all disputes of fact.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: March 20, 2024          By   /s/ *Michael L Brown II*

MICHAEL L. BROWN II
JELANI LINDSEY
AIMEE CARLISLE
Deputy Federal Public Defenders
Attorneys for Deneyvous Hobson

14

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Deneyvous Hobson, certifies that this motion contains 4,345 words, which complies with the word limit of L.R. 11-6.1.

DATED:  March 20, 2024          */s/ Michael L. Brown II*
MICHAEL L. BROWN II

15