**JAY L. LICHTMAN**
State Bar No. 73399
LAW OFFICES OF JAY L. LICHTMAN
137 N. Larchmont Blvd., # 538
Los Angeles, California 90004
Telephone:  (213) 568-0984
Facsimile:  (213) 568-4761
Email:       jaylawla@aol.com

Attorney for Defendant
**JAMES RUSSEL DAVIS**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JAMES RUSSEL DAVIS,<br><br>Defendant. | No. CR 23-102-FLA-2<br><br>**DEFENDANT'S SENTENCING MEMORANDUM**<br><br><br>Hearing Date:  June 7, 2024<br><br>Hearing Time:  11:00 a.m. |

The defendant, JAMES RUSSELL DAVIS, through his undersigned counsel, JAY L. LICHTMAN, hereby files his Defendant's Sentencing Memorandum.

This filing is based on the attached arguments and exhibits, the complete file in this case, and any evidence or argument presented at a hearing on the matter.

Dated:  May 24, 2024

Respectfully submitted,
/s/
JAY L. LICHTMAN
Attorney for Defendant
JAMES RUSSELL DAVIS

Davis.Sent.Memo.5.24

1

# SENTENCING MEMORANDUM

## I.

## INTRODUCTION

The Probation Officer calculated a Total Offense Level of 23 and Criminal History Category II, resulting in a guideline range of 51-63 months plus a ten-year consecutive sentence under § 924(c).  As part of the guideline calculation, the Probation Officer included a two-level enhancement for taking property of a "financial institution" under § 2B3.1(b)(1).  For reasons articulated below, Mr. Davis objects to the two-level enhancement and contends that the Total Offense Level should be 21 with a guideline range of 41-51 months.  In all other respects, Mr. Davis agrees with the Probation Officer's guideline calculation.

In terms of the § 3553(a) factors, Mr. Davis has a tragic personal history and suffers from a serious medical condition.  When Mr. Davis was eight years old, Children Services filed a juvenile dependency petition charging "serious physical harm" and "emotional damage" due to neglect and "acts of cruelty."  At that time, Mr. Davis' mother began a lengthy struggle with drug addiction.  Mr. Davis was placed in his father's household and his half-brothers were sent to foster care.  This early childhood experience no doubt had a profound emotional effect on Mr. Davis growing up.

In addition, when Mr. Davis was about twenty-five years old he was struck in the chest by a stray bullet while he attended a youth basketball game.  The bullet has remained lodged over the aortic arch of the heart, causing Mr. Davis daily physical pain and emotional stress.  Dr. Ryan O'Connor, an emergency medical physician, elaborates on the medical concerns surrounding a person living with a bullet lodged near his heart.

Finally, under the facts of this case, the two-level enhancement for taking money from a financial institution should not be applied.  As the factual basis of the Plea Agreement states, the co-conspirators took cash during the robbery that belonged to the armored truck company, Sectran Security Services, not the credit union.  Moreover, the

prior "casing" of the armored truck driver further supports that the object of the robbery was to take money from the driver.  Sectran is not a financial institution.

## II.

## AS PART OF THE §3553(a) FACTORS, THE COURT IS URGED TO CONSIDER MR. DAVIS' TROUBLED PERSONAL HISTORY AND SERIOUS HEALTH CONDITION  IN IMPOSING ITS SENTENCE

Mr. Davis is thirty-five years old.  He was raised in the Los Angeles area in a two-parent household.  He has two maternal half-brothers.  After one of his brothers was arrested, Mr. Davis recalls that his mother began a lengthy struggle with drug addiction.  When Mr. Davis was eight years old, Children's Services filed a juvenile dependency petition.  The petition listed charges of "serious physical harm due to neglect, serious emotional damage; no provision for support of minor, minor subjected to acts of cruelty and sibling abuse or neglect."  (PSR ¶ 78).  Although, fortunately, the care Mr. Davis later received in his father's household normalized, the effects of serious physical and emotional abuse and cruelty he suffered at a young age no doubt has had a profound and lasting emotional effect on him growing up.  "It requires no citation of authority to assert that children who are abused in their youth generally face extraordinary problems developing into responsible productive citizens." *Santosky v. Kramer,* 455 U.S. 745, 789 (1982) (Rehnquist J., dissenting).  Moreover, "it seems beyond question that abuse suffered during childhood – at some level of severity – can impair a person's mental and emotional conditions." *United States v. Rivera,* 192 F.3d 81, 84 (2nd Cir. 1999).

Despite Mr. Davis' tragic and disturbing personal history, he attempted to rebuild his life.  He was able to timely graduate Susan Dorsey Miller Senior High School after completing special education classes for speech (PSR ¶ 93).  Moreover, Mr. Davis entered into a relationship with Dasha Smith.  The couple had two children together, Semaj Davis, age 16, and Semya Davis, age 13.  The relationship lasted for about eight

or nine years before separation (PSR ¶¶ 79-80).  Mr. Davis is currently engaged to Lakecha Daniels who is gainfully employed as an in-home care aide. (PSR ¶ 83).

Moreover, when Mr. Davis was about age twenty-five, he came within centimeters of losing his life.  In or about February/March, 2014, Mr. Davis and his friend attended a youth basketball game.  Suddenly a shooter entered the gym and began spraying bullets.  Mr. Davis, who was seated in the stands, was hit in the chest area.  He was rushed to California Hospital in downtown Los Angeles.  Doctors determined that a bullet fragment was lodged near his heart and could not be removed because of its location.  The bullet has remained near Mr. Davis' heart to this day (PSR ¶ 87).

A recent chest x-ray conducted by Trident Health Services (referred by the prison where Mr. Davis is incarcerated) confirmed that the bullet remains in Mr. Davis' chest. It reads: "1.6 cm metallic density projects over aortic arch [of the heart]."  (Exh. A). Due to his health condition, Mr. Davis continues to experience daily chest pain and sharp pain in his side.  Mr. Davis' concern that the bullet could dislodge or move into his heart has limited his physical movements and caused a great amount of daily stress. Mr. Davis consumed daily medication and smoked marijuana to help manage the pain (PSR ¶¶ 87, 91).

To further elaborate on Mr. Davis' health condition, Dr. Ryan O'Connor, an emergency medical physician, provides his report for the Court's consideration (Exh. B).  As Dr. O'Connor writes, it is his professional medical opinion "that retained projectiles from gunshot wounds have the potential to cause multiple complications in patients," most commonly, "chronic pain and other neurologic sequelae."  Moreover, though rare, "retained foreign bodies have the potential to migrate and cause damage by eroding adjacent structures."  Dr. O'Connor concludes: "A bullet near the heart, aorta, or lungs can cause damage to these structures and lead to potentially life-threatening complications including arrhythmia, infection, pneumothorax and hemorrhage."

4

In addition, due to his health condition and desire to remain close with his children, Mr. Davis became an "active stay-at-home father." He lived in a house rented by his father. He had custody of his children Thursday through Sunday, three times monthly (PSR ¶ 81). As part of his weekly routine, he would drive his children to their respective schools in the morning. While detained, Mr. Davis has maintained telephonic contact with his children (PSR ¶ 81).

Mr. Davis deeply regrets his involvement in the offenses charged in this case. He has come forward to appear before this Court to take full responsibility for his actions. He humbly asks the Court to consider his personal history and characteristics in deciding on an appropriate sentence.

### III.

### THE DEFENSE OBJECTS TO THE PSR'S TWO-POINT ENHANCEMENT FOR TAKING PROPERTY OF A "FINANCIAL INSTITUTION" UNDER THE FACTS OF THIS CASE

Pursuant to the terms of the plea agreement, Mr. Davis reserved his right to challenge a two-level enhancement for taking property of a financial institution. USSG § 2B3.1(b)(1) provides for a two-level increase if the property of a financial institution was taken, or if the taking of such property was an object of the offense.

At the time of the robbery on February 14, 2022, Mr. Davis was a lookout when his co-conspirators took money from a Sectran Security armored truck driver while the driver was servicing ATMs located outside Wescom Credit Union (WCU). Sectran Security is a company that "provides armored transportation, smart safe, cash management and vault services to financial institutions and retailers . . . (Plea Agreement at 8). The Probation Officer concluded that the intent of the robbers was to target Wescom's property which was inside the ATMs. The Officer cited the fact that Mr. Davis and his co-conspirator "cased" WCU on January 24, 2022 and watched the Sectran driver service the ATMs (PSR ¶¶ 33-34).

1    The defense contends that the facts support the conclusion that the robbers' target
2    was not the credit union but the Sectran driver and that the money taken belonged to
3    Sectran, not WCU.  "Defendant's co-conspirators stole bags filled with approximately
4    $166,640 in **cash belonging to Sectran Security Services**" (Plea Agreement at 8).
5    Indeed, the driver presumably had Sectran cash to be used to provide services to banks
6    and retail outlets throughout the Los Angeles area.  The fact that the driver had been
7    "cased" at the ATM three weeks earlier further supports the conclusion that WCU's
8    money was not the target.  According to the discovery, on the casing day, January 24,
9    2022, Mr. Davis drove his vehicle to the WCU ATM where he withdrew money from
10   his account.  While Mr. Davis was engaged in the transaction, the government alleged
11   that photos were taken in the direction of the Sectran driver servicing the ATMs. The
12   driver who was the target of the casing incident was believed to be the same driver who
13   was eventually robbed.

14   In discussions with government counsel on the application of this enhancement,
15   the government cited *United States v. Waskom,* 179 F.3d 303, 314 (5th Cir. 1999).
16   However, the facts of the instant case are distinguishable from those in *Waskom.*

17   In *Waskom,* the appellate court held that the district court "did not clearly err" by
18   determining that the taking of the property of a financial institution pursuant to
19   2B3.1(b)(1) was an object of the offense.  *Id.* at 314. There, the defendant contended
20   that the object of the offense was robbery of an armored car, not a financial institution.
21   However, the PSR noted that the armored car routinely made regular pick-ups and
22   deliveries of United States currency to federally insured banks.  And, a co-conspirator
23   conducted surveillance of the armored car as it made deliveries to the banks.  *Id.* at 306,
24   314.

25   In the instant case, the casing incident involved a one-time surveillance of the
26   armored truck driver servicing an ATM at a credit union.  The robbery of the driver
27   occurred three weeks later at the same credit union.  Unlike in *Waskom,* there was no
28   evidence that the robbers surveilled the armored truck making regular pick-ups and

deliveries of cash to banks around the area. Sectran Security provided armored transportation to both financial institutions and retailers and the cash taken in the subject robbery belonged to Sectran.

Accordingly, Mr. Davis objects to the two-level enhancement for taking money from a financial institution. Sectran Security itself is not a financial institution but essentially a transport service.

**CONCLUSION**

Section 3553(a) mandates that the Court impose a sentence "sufficient, but not greater than necessary," to comply with the purposes set forth in that statute. In imposing sentence, the Court is urged to consider Mr. Davis' tragic personal history, his precarious and stressful ongoing health condition and his stepping forward with deep remorse to acknowledge his involvement in this case.

Dated: May 24, 2024

Respectfully submitted,

 /s/
JAY L. LICHTMAN
Attorney for Defendant
JAMES RUSSELL DAVIS

Davis.Sent.Memo.5.24